GEORGE E. WALLACE v. MORRIS L. HALLOWELL and Another.[1]

December 17, 1896.

Nos. 10,382—(129).

**Promissory Notes — Fraudulent Representations — Principal and Agent—Instructions.**

The defendants counterclaimed damages for alleged false and fraudulent representations made to them by plaintiff's testator in regard to the financial responsibility of the makers of promissory notes accepted by defendants in exchange for the notes in suit, and the evidence was conflicting as to whether such representations were made before or after the exchange was completed, and as to whether one Foster had authority, as agent of defendants, to make the exchange. *Held,* that the court erred in charging the jury as follows: "If you find that before Mr. Wallace and Mr. Snider met, on August 3, 1891, Mr. Foster had given Mr. Wallace to understand, and Mr. Wallace did understand, that the exchange had been agreed to on both sides, and the agreement was afterwards, and on that day, carried out without change or variation, and no intimation was given Mr. Wallace, and he had no knowledge or suspicion, that the matter was still open, then your verdict will be for the plaintiffs for the full sum of $29,040, no matter what statements were made by Mr. Wallace to Mr. Snider."

Action in the district court for Hennepin county by George E. Wallace, as executor of Edwin Wallace, deceased.   The action was originally begun by decedent and another as co-partners under the name of E. G. & E. Wallace, and was afterwards prosecuted by decedent as surviving partner.   From a judgment in favor of plain-

[1] Reported in 69 N. W. 466.

tiff, after a trial before Elliott, J., and a jury, defendants appealed. Reversed.

*F. B. Hart*, for appellants.

*Henry E. Barnes, Jr.*, and *Selden Bacon*, for respondent.

COLLINS, J. The issues raised by the pleadings herein were stated in a former opinion (56 Minn. 501, 58 N. W. 292), at which time an order denying plaintiff's motion for a new trial was reversed, and the case remanded, with directions to the court below to grant a new trial as to the amount of damages defendants were entitled to on the counterclaim, or as to all of the issues, as it saw fit. A new trial as to all issues was granted, the case was tried to a jury, and a verdict rendered in plaintiff's favor for the full amount claimed in the complaint. This appeal is from a judgment entered after an order denying defendants' motion for a new trial, and we shall have to deal with but one assignment of error.

On the trial it was shown that one Foster—a note broker residing in Boston, Mass.—had been authorized to find a market in the East for defendants' paper to the amount of $25,000. Foster knew that defendants had theretofore exchanged some of their own notes for those made by Lee & Ferguson, and he also knew that E. G. & E. Wallace, plaintiffs, when this action was brought, held the paper of Lee & Ferguson, amounting to about $15,000, as well as paper made by W. E. Schmertz & Co., then in active business in Pittsburg, Pa. Foster wrote to the Wallaces, proposing that they discount defendants' notes, of the face value of $25,000, offering, if they would, to accept in exchange Lee & Ferguson's paper to the amount of $15,000, and the balance could be paid in money, or in notes made by Schmertz & Co., as might be preferred by E. G. & E. Wallace. A few letters and telegrams passed between the parties, and on August 3, 1891, E. Wallace visited Foster, at the office of the latter in Boston, having with him notes made by Lee & Ferguson representing $15,000 in value, and notes made by Schmertz & Co. more than sufficient in face value to cover the difference between the amount of the Lee & Ferguson notes and defendants' paper for $25,000.

Defendant Snider was then in Boston, but was not at Foster's office when Wallace first called there. The parties differ materially as to what then transpired in reference to the exchange of notes.

According to the testimony of Wallace and Foster, the former and Snider were total strangers, and did not meet until after the trade had been fully completed by the delivery to Foster, for defendants, of the Lee & Ferguson paper and enough of the Schmertz paper to amount to the sum of $24,975, and Foster had delivered to Wallace defendants' notes of a like face value, which notes, they testified, were written and prepared by Foster in his office, at the time, taken out by him to another office in the city, there signed by Snider for the defendant firm, of which he was a member, and indorsed by him individually.   It was after Foster's return with these notes completely executed, and after they had been delivered to Wallace, and were in his actual possession, that Snider came to Foster's office, for the first time met Wallace, and had any conversation with him, according to the testimony given upon the trial by both Wallace and Foster; and, of course, if this was true, the claim, made by defendants, that they were induced to take the Schmertz notes by means of false and fraudulent representations, made prior to the exchange, and by Wallace himself, had no foundation in fact.   Wallace also denied that at this conversation he, falsely or otherwise, made any representations concerning the financial standing of Schmertz & Co., but admitted that, in a casual way, he remarked to Snider that he thought Schmertz perfectly responsible.

But Snider's version of what occurred, and how the exchange was made, differed materially from that given by Wallace and Foster. He testified that he met Wallace at Foster's office for the purpose of discussing the terms of a proposed exchange of notes; that he knew nothing of the financial responsibility of Schmertz & Co.; that he then had the conversation with Wallace, in which, it is claimed, the false and fraudulent representations were made by the latter; that he relied upon these statements, and by reason thereof consented to take the Schmertz paper.   Snider also testified that the notes in suit were then and there made out by Foster, so that their face value would equal the amount due on the Lee & Ferguson paper, and on three of the Schmertz notes then held by Wallace; that he signed the firm name, M. L. Hallowell & Co., to them, and at the same time indorsed each individually; and that the exchange was made afterwards, Wallace himself and Foster being present, in the latter's office, at the time.

The issues thus made, by the contradictory and irreconcilable testimony of these witnesses, as to when, with respect to the consummation of the trade and actual exchange of the paper, the conversation was had between Wallace and Snider; what that conversation was; whether the trade was made by Foster, acting for defendants, with Wallace, before the latter met Snider, or was made by Wallace and Snider personally, the latter being induced to exchange defendants' notes because of false and fraudulent representations then made to him by the former,—were clear, and should have been easily understood by the jury. And these issues and the rules of law applicable thereto were plainly presented in the charge of the court.

But, at the request of plaintiff's counsel, the court also charged, defendants' counsel excepting, as follows:

"If you find that before Mr. Wallace and Mr. Snider met on August 3, 1891, Mr. Foster had given Mr. Wallace to understand, and Mr. Wallace did understand, that the exchange had been agreed to on both sides, and the agreement was afterwards, and on that day, carried out without change or variation, and no intimation was given Mr. Wallace, and he had no knowledge or suspicion, that the matter was still open, then your verdict will be for the plaintiffs for the full sum of $29,040, no matter what statements were made by Mr. Wallace to Mr. Snider."

And it is this part of the charge which we are required to dispose of. It was equivalent to charging that, if Foster had given Wallace to understand, before the latter met Snider on August 3, and Wallace did understand, that the exchange had been agreed upon by both parties, and this agreement was afterwards performed without change or variation, and no intimation was given to Wallace, and he had no suspicion or knowledge, that the matter was still open, it was immaterial what statements or representations were made by Wallace to Snider concerning Schmertz's standing financially in the course of their conversation in Foster's office, before the actual exchange of notes was made.

To sustain this portion of the charge, counsel for plaintiff take the position that, if defendants' accredited agent informed Wallace that the exchange had been agreed upon, and the trade closed, and, acting upon this, Wallace had turned over this Lee & Ferguson and the Schmertz paper to the agent prior to the conversation with Snider, and at that time had no intimation or suspicion that the matter

was still open, there could have been no intent on his part to deceive, no matter what he said to Snider before the latter actually executed and delivered the notes in suit, and therefore the gist of the action for deceit was eliminated from the case. But, in taking this position, counsel assumes that, from the evidence, it appeared conclusively that Foster was the accredited agent to make the exchange in behalf of Snider, or that the latter held him out as such to Wallace, and that Wallace was justified in assuming that Foster had full authority in the premises. And counsel also takes it for granted that, from the evidence, it conclusively appeared that Foster himself did make the trade with Wallace.

We are abundantly warranted in saying that neither of these essential things were conclusively established upon the trial. It was not shown that, prior to August 3, Wallace knew, or had any reason to believe, that Foster was authorized to exchange, or even to sell, any of defendants' paper, except as he might have supposed that authority existed from what was contained in Foster's letters and telegrams to E. G. & E. Wallace. The statements in these communications were Foster's representations as to his authority, and, standing alone, would not bind Snider. It was not shown upon the trial that Snider knew anything about these letters or telegrams. Snider testified that he applied to Foster to find for him a purchaser for defendants' paper, and was told by Foster that Wallace would be in Boston August 3, and he thought a trade could be made if Snider would take the Lee & Ferguson paper for $15,000, and Schmertz & Co. paper for the balance, and that, when Wallace arrived, Foster came to his (Snider's) hotel, notified him of the fact, and requested him to go to the office for the purpose of closing the transaction, if it could be done, and that he complied with the request. Snider testified emphatically that he never authorized Foster to make the trade for him, and it cannot be said that Foster was an accredited agent to negotiate and complete the trade, or that Wallace had reason to believe him to be, unless Snider's version of the transaction be wholly disregarded.

Further than this, unless we accept the testimony of Wallace and Foster as to all that transpired in reference to the exchange, from the time the former entered Foster's office until defendants'. notes had been brought in, executed at another place, and put into Wal-

lace's possession, as absolutely conclusive, there is nothing in the record to show that Snider held Foster out as his agent to make and conclude the trade, or that Wallace had reason to suppose so.   It was not shown, so far as we can ascertain, that Snider knew what had been written to Wallace or communicated to him by wire prior to August 3.   From the testimony of Wallace and Foster it does not appear that, when these persons met in the latter's office, anything transpired which would lead Wallace to suppose that Snider held Foster out as authorized to complete the trade until the latter prepared defendants' notes, took them out, and returned with them duly executed and indorsed; and that the notes were executed and indorsed at any other place than in Foster's office was denied by Snider, as before stated.   If Foster had defendants' notes in his possession, all ready for exchange, when Wallace reached the office, and was to all appearances completely equipped to make the trade, in Snider's absence, this circumstance might, of itself, lead Wallace to suppose that Foster was fully empowered to act; but this was not the situation.   Foster did not have the notes, and Wallace must have known it, for he handed over the paper which he proposed to exchange, that Foster might ascertain, by computation, the exact amount for which defendants' notes were to be written.

We have searched the record in vain for the purpose of finding any act of Snider's which would justify Wallace in saying that, prior to the time Snider came to Foster's office, he had given him any reason for supposing that Foster possessed authority to complete the exchange of notes, unless we accept as conclusive the testimony, given by Wallace and Foster, that Snider did not meet the former until defendants' notes had been handed to him, and, as he stated, were in his pocket.   And, in endeavoring to sustain this part of the charge, counsel argue it as if it had been conclusively shown that, relying upon Foster's assertion that an exchange had been agreed upon, and a trade closed, Wallace had turned over to the former, for Snider, the Lee & Ferguson and the Schmertz notes, had actually made a delivery thereof, and had fully performed his part, before Snider came in the office.   No such showing has been made.   It is true that Wallace handed his notes to Foster, and that the latter had them on his desk; but, evidently, this was for the sole purpose of making a computation upon which to base the amount for which defendants' notes

should be written. The testimony falls far short of showing that Wallace or Foster regarded this as a delivery to the latter in performance of any contract.

Taking counsel for plaintiff upon their own ground, in order to sustain the charge in question, it must have conclusively appeared from the evidence—First, that Foster had either actual or apparent authority to make the contract for an exchange of paper, claimed by counsel to have been made by him; and, second, that he did make such a contract. On both of these points the evidence was not conclusive, as has been heretofore shown.

More than this. Even if it had conclusively appeared that Foster had apparent authority to close the trade for defendants, if, in fact, he did not have such authority, and Wallace made the false representations believing the trade was closed, when it was not, the law will not excuse him. In order to sustain the act of one who has apparent authority to act as an agent, but no authority in fact, the doctrine of estoppel must be invoked. We are not prepared to hold that the law will permit the plaintiff to appeal to the doctrine of estoppel for the purpose of upholding the commission of a fraud. The court might have submitted the conditions above recited to the jury, if it conclusively appeared that they existed, or if the jury could find that they existed, with the instruction that they might be considered as circumstances from which to determine whether or not Wallace made the false representation with intent to defraud. But the court had no right to assume, as it did, that it conclusively appeared that Foster had apparent authority, and that Wallace acted upon such apparent authority. And, if all this conclusively appeared, the court could not charge, as a question of law, what Wallace's motives or intent were in making the false representations. That was still a question of fact for the jury. A new trial must be had.

Judgment reversed.